REBECCA K. CROWN INCOME CHARITABLE FUND,
ARIE STEVEN CROWN, JAMES SCHINE CROWN,
DANIEL MORRIS CROWN AND SUSAN CROWN,
TRUSTEES, PETITIONER *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT

Docket No. 30291-88.          Filed March 25, 1992.

*Alan L. Reinstein, Geoffrey F. Grossman,* and *Byron S. Miller,* for petitioner.

*James S. Stanis,* for respondent.

OPINION

COHEN, *Judge:* Respondent determined deficiencies in and additions to the Federal income tax liabilities of the Rebecca K. Crown Income Charitable Fund as follows:

| TYE | Deficiency | Additions to tax sec. 6661 |
|---|---|---|
| June 30, 1984 | $138,532 | $34,633.00 |

| TYE | Deficiency | Additions to tax sec. 6661 |
|---|---|---|
| June 30, 1985 | 123,458 | 30,864.50 |
| June 30, 1986 | 449,596 | 112,399.00 |

Unless indicated otherwise, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues to be decided are: (1) Whether the Rebecca K. Crown Income Charitable Fund is entitled to income tax deductions for charitable contributions under section 642(c)(1) with respect to amounts paid to charities in excess of an annual annuity payable under the trust agreement; (2) whether, in the alternative, the amounts in dispute may be deducted under section 661(a)(2); (3) barring deduction under sections 642(c)(1) and 661(a)(2), whether the deficiencies in tax are properly limited to the taxable year ended June 30, 1986; and (4) whether respondent properly determined additions to tax under section 6661.

## Background

This case was submitted fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time the petition was filed, the principal place of business of the Rebecca K. Crown Income Charitable Fund was Chicago, Illinois.

On July 21, 1983, Henry Crown, Lester Crown, John J. Crown, and Joanne S. Crown (donors) established an irrevocable trust, the Rebecca K. Crown Income Charitable Fund (trust or petitioner). Collectively, the donors transferred $15 million to the trust.

Arie Steven Crown, James Schine Crown, Daniel Morris Crown, and Susan Crown were named as trustees of the trust. The trustees adopted a fiscal and taxable year ending June 30.

The trust is a split interest or so-called charitable lead trust providing for specified annuity payments to unnamed qualified charities, with the remainder interest to pass to noncharitable beneficiaries. "Qualified charities" are defined in section A2.01(A)(3) of the trust agreement as follows:

"Qualified Charity" at any time shall mean any corporation, trust or other entity described in Section 170(c) of the Code, then existing or organized by the Trustee for the purpose, bequests to which by a person dying at such time would be deductible for federal estate tax purposes under Section 2055 of the Code;

The noncharitable beneficiaries are defined in section A2.01-(A)(5) of the trust agreement and include members of the Crown family, Crown employees and partners, and contributors to specified charities.

The formula for determining the amount of the annuity payable to qualified charities is set forth in section A2.02(A) of the trust agreement, which states in pertinent part:

Commencing as of the date hereof and until the Discretionary Income Date, the Trustee shall pay, annually at the end of each year of the trust, to one or more Qualified Charities selected by the Trustee, an amount equal to six and one-half percent (6½%) of the initial fair market value of the Trust Estate * * *

Under this formula, the annual annuity amount equals $975,000, which is 6½ percent of $15 million (the initial fair market value of the trust estate).

Section A2.02(B) of the trust agreement states that the annual annuity amount payable under section A2.02(A) of the trust agreement shall be paid first from ordinary income. Should ordinary income prove insufficient to satisfy the annuity obligation, the payment may be made (in declining order) from short-term capital gains, long-term capital gains, and principal.

The trust agreement further states that the annuity amounts will be paid annually from the date of the trust agreement until the "discretionary income date", which is defined generally in section A2.01(A)(4) of the trust agreement as the "charitable termination date". The "charitable termination date" is defined in section A2.01(A)(1) of the trust agreement as the 45th anniversary of the date of the trust agreement. Thus, qualified charities would receive $975,000 each year for a period of 45 years.

Section A2.01(A)(4) of the trust agreement states that the discretionary income date shall not be the charitable termination date if, by reason of the operation of section A2.02(C) of the trust agreement, all amounts required to be paid to qualified charities have been paid prior to the charitable

termination date. Section A2.02(C) of the trust agreement states:

If as a matter of law the Trustee may accelerate the payment of any amounts otherwise payable to Qualified Charities hereunder without adversely affecting the maximum charitable deduction otherwise available hereunder, then the Trustee may from time to time pay and distribute, in the manner provided in Section A2.02(A) hereof, any portion of any excess income of the Trust Estate not otherwise required to be paid under said Section A2.02(A), in commutation of future amounts payable hereunder, determining the commuted value thereof in accordance with fiduciary principles as between income and remainder interests, consistent with any rules or regulations adopted by the Internal Revenue Service. Prior to the Discretionary Income Date, any excess income not so distributed shall be added to the principal of the Trust Estate.

In other words, section A2.02(C) of the trust agreement states that the charitable annuity may be paid in advance of the stated 45-year term if, as a matter of law, income in excess of the $975,000 annual annuity amount may be paid in commutation of future annuity payments without adversely affecting the maximum charitable deduction available under the trust. However, if such accelerated payments are not permitted under the law, the trustees are required to accumulate such income and add it to the principal of the trust estate.

Section A2.06(A) of the trust agreement states that, in the administration and disposition of the trust, the trustees shall not exercise their powers in such a way as to deprive the trust or the grantors of the maximum deduction otherwise available for purposes of the Federal income tax. Section A2.06(D) of the trust agreement states that the trustees generally shall have the power to amend the terms of the trust if necessary to ensure that the trust or the grantors are not deprived of the maximum deduction otherwise available for purposes of the Federal income tax.

Each of the donors filed a Federal gift tax return reflecting his or her contribution to the trust. In computing the gift tax, each donor claimed a charitable deduction under section 2522(c)(2)(B) for the present value of the annuity (as computed under section 25.2512-9, Gift Tax Regs.) payable to charitable beneficiaries under section A2.02 of the trust agreement. Because the then-present value of the annuity exceeded the value of the donors' respective gifts to the trust, the donors paid no Federal gift tax on their contributions to the trust.

(Petitioner's objection to the relevance of the preceding paragraph is overruled.)

The following table indicates income earned by the trust during the years in issue, amounts and timing of payments to charities, and charitable contribution deductions claimed by the trust under section 642(c)(1) and section 1.642(c)-1(b), Income Tax Regs.:

| | TYE | | |
|---|---|---|---|
| | *6/30/84* | *6/30/85* | *6/30/86* |
| Income earned | $1,285,544 | $1,254,326 | $1,943,797 |
| Payments to charities | - - - | 1,900,000 | 2,471,200 |
| Charitable deductions reflecting: | | | |
| Current year payments to charities | - - - | 646,336 | 1,884,198 |
| Payments to charities from succeeding taxable years | 1,253,664 | 587,002 | - - - |

The trustees did not, however, commute any future annuity payments as a result of the payments to charities in excess of the $975,000 annual annuity amount.

For each of the years in issue, petitioner filed Forms 5227 (Split-Interest Trust Information Return), Forms 1041-A (Trust Accumulation of Charitable Amounts), and Forms 1041 (U.S. Fiduciary Income Tax Return). These forms disclosed that petitioner is structured as a charitable lead trust, that an annual annuity of $975,000 is required to be paid to charitable beneficiaries, and that petitioner claimed charitable deductions in excess of the annual annuity amount during the years in issue.

## Discussion

Respondent determined deficiencies in the Federal income tax liability of the trust for the years in issue. Respondent further determined that the addition to tax for substantial understatement of income tax under section 6661 is applicable for each of the taxable years involved.

The first issue to be decided is whether the trust is entitled to income tax deductions for charitable contributions under section 642(c)(1) with respect to amounts paid to charities in

excess of the annual annuity amount described in the trust agreement.

Section 642(c)(1) allows a deduction to an estate or trust for amounts paid or permanently set aside for a . charitable purpose as follows:

(1) GENERAL RULE.—In the case of an estate or trust * * *, there shall be allowed as a deduction in computing its taxable income (in lieu of the deduction allowed by section 170(a), relating to deduction for charitable, etc., contributions and gifts) any amount of the gross income, without limitation, which pursuant to the terms of the governing instrument is, during the taxable year, paid for a purpose specified in section 170(c) (determined without regard to section 170(c)(2)(A)). If a charitable contribution is paid after the close of such taxable year and on or before the last day of the year following the close of such taxable year, then the trustee or administrator may elect to treat such contribution as paid during such taxable year. The election shall be made at such time and in such manner as the Secretary prescribes by regulations.

In short, section 642(c)(1) allows an estate or trust to deduct charitable contributions to the full extent of gross income so long as the transfers are made "pursuant to the terms of the governing instrument". *Old Colony Trust Co. v. Commissioner,* 301 U.S. 379, 383 (1937).

The parties disagree as to whether the amounts in excess of the annual annuity were paid pursuant to the terms of the governing instrument as required for deduction under section 642(c)(1). Underlying the parties' disagreement is a dispute over the proper interpretation of section A2.02(C) of the trust agreement. We begin by construing the express terms of the trust agreement.

Section A2.02(C) of the trust agreement, set forth in full above (*supra* p. 330), states that the charitable annuity may be paid in advance of the stated 45-year term if, as a matter of law, income in excess of the $975,000 annual annuity amount may be paid in commutation of future annuity payments without adversely affecting the maximum charitable deduction otherwise available under the trust. However, if such payments are not permitted under the law, the trustees are required to accumulate such income and add it to the principal of the trust estate.

The parties dispute the meaning of the phrase "the maximum charitable deduction otherwise available" under the trust contained in section A2.02(C) of the trust agreement. Peti-

tioner argues that the language refers solely to the charitable deduction for purposes of the income tax under section 642(c). Respondent contends that the language refers to the charitable deduction for purposes of the gift tax under section 2522(c)(2)-(B).

Section 2522(c)(2)(B) provides in pertinent part that, in the case of a split-interest trust (such as the charitable lead trust involved here), no charitable deduction for Federal gift tax purposes will be allowed to a donor who has transferred an interest in property to charity unless such interest is "in the form of a guaranteed annuity".

In support of its interpretation, petitioner emphasizes that the term "deduction" is in the singular, indicating that it refers to only one form of charitable deduction as opposed to both the income tax and gift tax deductions for charitable contributions. Petitioner further contends that use of the term "maximum" indicates a reference to the income tax deduction for charitable contributions under section 642(c) because only that deduction is subject to a maximum amount. In this regard, petitioner argues that the donors' gift tax deductions would fail outright under section 2522(c)(2)(B) if accelerated payments were authorized under the trust, yet contrary to law. Finally, petitioner directs attention to other sections of the trust agreement, particularly section A2.06(A) and (D), that expressly refer to the income tax deduction available to both the trust and the donors. Petitioner suggests that, if section A2.02(C) of the trust agreement were intended to refer to the donors' gift tax deductions, the trust agreement would have so provided.

Respondent argues that the trust was created by the donors as a means to achieve inter vivos transfers free of Federal gift tax liability and that section A2.02(C) of the trust agreement is reasonably read in this context as a provision primarily designed to ensure that the gift tax deductions claimed by the donors would be preserved. Respondent maintains that petitioner's contention that section A2.02(C) of the trust agreement refers to the income tax deduction under section 642(c) is circular. In particular, respondent contends that petitioner's interpretation of the trust provision would make accelerated payments contingent on there being no adverse effect on a deduction which, itself, is contingent on the payments being

made pursuant to the terms of the governing instrument. Finally, respondent contends that section A2.06(A) and (D) of the trust agreement reveals that the drafters of the trust made specific reference to the income tax deduction for charitable contributions where intended and that the absence of such a reference in section A2.02(C) of the trust agreement suggests a reference to the gift tax deduction.

We agree with respondent that section A2.02(C) of the trust agreement is properly read to include a reference to the gift tax deduction for charitable contributions under section 2522(c)(2)(B). Viewed in light of all the surrounding circumstances, it appears that the trust was structured as a charitable lead trust in order to offset the substantial gift tax liabilities that otherwise would be imposed on the donors for their gifts to the trust. Consequently, it is more reasonable to read section A2.02(C) of the trust agreement as a provision designed primarily to preserve the donors' gift tax deductions by ensuring that no payments are made under the trust to defeat the "guaranteed annuity" payable to charitable beneficiaries. Petitioner's arguments to the contrary are not persuasive.

To summarize, the trust agreement states that the trustees have the authority to pay the charitable annuity in advance of the stated 45-year term if, as a matter of law, income in excess of the $975,000 annual annuity amount may be paid in commutation of future annuity payments without adversely affecting the maximum gift tax charitable deduction otherwise available to the original donors of the trust under section 2522(c)-(2)(B). With the foregoing in mind, we return to the original question of whether petitioner paid the disputed amounts to charities pursuant to the terms of the trust agreement as required for the income tax deduction under section 642(c).

Petitioner argues that the accelerated payment of a charitable annuity is consistent with the requirement of section 2522(c)(2)(B) that the charitable interest be in the form of a guaranteed annuity. Thus, petitioner concludes that the disputed amounts were paid pursuant to the terms of the trust.

Respondent contends that the disputed amounts were not paid pursuant to the terms of the trust agreement on the alternative grounds that (1) the commuted payment of a charitable annuity would, as a matter of law, preclude the annuity from being treated as a guaranteed annuity under

section 2522(c)(2)(B), and (2) the disputed payments were not applied to commute future annuity payments as required by the express terms of the trust agreement.

With respect to the latter contention, petitioner disputes the effect of the language of section A2.02(C) of the trust agreement which states that payments in excess of the annuity amount will be paid "in commutation of future amounts payable hereunder". While petitioner acknowledges that the amounts in question have not been applied to commute future annuity payments, petitioner nonetheless contends that, because the amounts in question were paid to qualified charities during each of the years in issue, future payments have been commuted in that the annuity term is shortened. Petitioner further contends that section A2.02(C) of the trust agreement imposes no time limit for commutation of annuity payments and that commutation in the sense of making a computation of the present value of future payments is nothing more than a condition subsequent to prepayment. Petitioners take the position that:

With the right to, and, perhaps, the manner of, commutation pending before respondent and then the courts, reasonably prudent conduct compelled and continues to compel deferral of judgment by petitioners until duly constituted authority shall make its final determination. * * *

Respondent maintains that commutation of future annuity payments is necessary before the disputed payments may be characterized as having been made pursuant to the terms of the trust as required for deduction under section 642(c). Specifically, respondent maintains that the payments must be applied to offset future annuity payments (as discounted to present value) so that the trust's obligation with respect to future annuity payments may be determined.

The term "commuted value" is commonly defined as "The present value of a future interest in property used in taxation and in evaluating damages. Present value of future payments when discounted." Black's Law Dictionary 281 (6th ed. 1990). With this definition and the express terms of section A2.02(C) of the trust agreement in mind, the provision is logically read to require that amounts paid to charities in excess of the annual annuity amount are to be applied to offset the present value of future payments as discounted. Moreover, the trust agreement specifically states that the commuted value of such

payments will be determined in accordance with fiduciary principles.

We agree with respondent that commutation is necessary before it can be said that the amounts in dispute were paid pursuant to the express terms of section A2.02(C) of the trust agreement. We emphasize, however, that we express no opinion here as to whether the payment of a charitable lead annuity may be accelerated consistent with the requirement of section 2522(c)(2)(B) that the charitable interest be in the form of a guaranteed annuity.

In so ruling, we reject petitioner's contention that the lack of reference in the trust agreement as to timing of commutation gives the trustees the authority to delay indefinitely making a decision in this regard. To the contrary, it seems to us that the trustees would, at a minimum, have the fiduciary responsibility to compute properly the commuted value of affected future payments and timely advise the charitable donee of the exact amount of future annuity payments to be offset by the current payments.

We likewise reject petitioner's argument equating acceleration of annuity payments with commutation. While the end result of the accelerated payment of an annuity obligation is to reduce the period for payment of the annuity, commutation adds an element of finality to the equation. In particular, a formal computation of the present value of future payments is necessary to reflect the time value of money and to identify with specificity the amount of future payments that are to be treated as being satisfied by the current payments.

The requirement of section 2522(c)(2)(B) that the charitable interest be "in the form of a guaranteed annuity" was added to the Internal Revenue Code by the Tax Reform Act of 1969, Pub. L. 91-172, sec. 201(d)(3), 83 Stat. 487, 561, to "assure that the amount received by the charity, in fact, bears a reasonable correlation to the amount of the charitable contribution deduction allowed the taxpayer." H. Rept. 91-413 (1969), 1969-3 C.B. 200, 239. Until petitioner applies a definite formula to commute future payments, there is no way for the Court to be sure that the amount actually paid to charity bears a "reasonable correlation" to the amount of the charitable deductions claimed by the donors for purposes of the gift tax under section 2522(c)(2)(B).

For the foregoing reasons, we conclude that the trust agreement requires commutation (in the formal sense of a computation) contemporaneously with payments to charity in excess of the annual annuity amount. Because petitioner concedes that the amounts in question were not transferred in commutation of future annuity payments, we sustain respondent's determination that the amounts in question were not transferred pursuant to the terms of the trust. It follows that the deductions claimed by petitioner under section 642(c) are disallowed.

We now turn to petitioner's alternative contention that the disputed amounts may be deducted under section 661(a)(2). Section 661(a)(2) provides in pertinent part:

> SEC. 661(a). DEDUCTION.—In any taxable year there shall be allowed as a deduction in computing the taxable income of an estate or trust (other than a trust to which subpart B applies), the sum of—
>
> \* \* \* \* \* \* \*
>
> (2) any other amounts properly paid or credited or required to be distributed for such taxable year;
>
> but such deduction shall not exceed the distributable net income of the estate or trust.

Petitioner maintains that, regardless of whether the amounts in question were paid pursuant to the terms of the trust under section 642(c)(1), the amounts in question were "properly paid" for purposes of deduction under section 661(a)(2). Petitioner contends that the standard for determining whether an amount is properly paid under section 661-(a)(2) is less stringent than the standard found in section 642(c)(1). On this ground, petitioner asserts that the trustees' "rational, principled, disinterested, good faith belief that they were empowered to make extra distributions to charities constitutes proper action under section 661(a)(2)."

Respondent, relying upon section 663(a)(2) and section 1.663(a)-2, Income Tax Regs., argues that, because the payments do not qualify for deduction under section 642(c), they also fail to qualify for deduction under section 661(a)(2). Section 663(a)(2) provides in pertinent part:

> SEC. 663(a). EXCLUSIONS.—There shall not be included as amounts falling within section 661(a) or 662(a)—
>
> \* \* \* \* \* \* \*

(2) CHARITABLE, ETC., DISTRIBUTIONS.—Any amount paid or permanently set aside or otherwise qualifying for the deduction provided in section 642(c) * * *

Section 1.663(a)-2, Income Tax Regs., provides in pertinent part that "Amounts paid, permanently set aside, or to be used for charitable, etc., purposes are deductible by estates or trusts only as provided in section 642(c)."

In *Estate of O'Connor v. Commissioner*, 69 T.C. 165, 176-179 (1977), we sustained the validity of section 1.663(a)-2, Income Tax Regs. See also *United States Trust Co. v. IRS*, 803 F.2d 1363, 1370 (5th Cir. 1986); *Mott v. United States*, 199 Ct. Cl. 127, 462 F.2d 512, 517 (1972). In our view, if amounts paid by a trust to a charitable organization are to be deducted, the taxpayer must establish that the requirements of section 642(c) are satisfied.

Petitioner argues that our decision in *Estate of O'Connor* upholding section 1.663(a)-2, Income Tax Regs., is incorrect on the ground that section 663(a)(2) merely provides that amounts paid to charities are to be deducted under section 642(c) in cases where both sections 642(c) and 661(a) would otherwise apply. Petitioner contends that, where an amount paid to charity is not deductible under section 642(c), it may nonetheless be deducted under section 661(a) if properly paid.

We disagree with petitioner and will not reverse our prior position. In both *Estate of O'Connor* and the present case, the payments were not made pursuant to the governing instrument. We conclude that the amounts in question may not be deducted under section 661(a)(2).

Petitioner next contends that respondent erred in determining deficiencies for the taxable years ended June 30, 1984, and June 30, 1985. It is petitioner's position that, prior to the taxable year ended June 30, 1986, the aggregate of the payments made to charitable beneficiaries did not exceed the aggregate of the annual annuity amount that the trust was authorized to pay to such beneficiaries.

Respondent contends that there is no statutory support for petitioner's argument that the annual annuity amount may be aggregated so as to limit excess payments to the taxable year ended June 30, 1986. We agree with respondent.

Petitioner's argument that the annuity amounts may be aggregated so as to limit the excess payments to the taxable

year ended June 30, 1986, ignores the language of the trust agreement specifically limiting the annual annuity payments to $975,000. Despite this limitation, the trustees elected under section 642(c)(1) and section 1.642(c)-1(b), Income Tax Regs., to claim a charitable deduction for the fiscal year ended June 30, 1984, in the amount of $1,253,664. The trustees made a similar election for the taxable year ended June 30, 1985, claiming a charitable deduction of $1,233,338.

To qualify for the income tax deduction for charitable contributions under section 642(c)(1), the payments to charity, whenever made, must have been carried out pursuant to the terms of the trust agreement. Although the amounts paid to charities in the taxable year ended June 30, 1985, may have been within the annual annuity limit when considered in the aggregate, the simple fact remains that the trustees elected to make charitable contributions for the taxable years ended June 30, 1984, and June 30, 1985, in excess of the annual annuity limit. Because the trustees claimed deductions for each of the taxable years in issue in excess of the annual annuity amount specified in the trust agreement, respondent's determination is sustained.

Finally, petitioner contends that respondent erred in determining additions to tax for substantial understatements under section 6661. Section 6661(a) imposes an addition to tax when there is a "substantial understatement of income tax for any taxable year". As applicable here, the rate of the addition to tax under section 6661(a) is equal to 25 percent of the underpayment attributable to the substantial understatement. *Pallottini v. Commissioner,* 90 T.C. 498 (1988). Petitioner bears the burden of proving that the additions to tax under section 6661(a) are not applicable. Rule 142(a).

Section 6661(b)(2)(A) defines "understatement" to mean the excess of the amount of tax required to be shown on the return over the amount of tax actually reported on the return. This understatement will be "substantial" if the amount of such understatement exceeds the greater of 10 percent of the amount of tax required to be shown on the return for the taxable year or $5,000. Sec. 6661(b)(1)(A).

The amount of the understatement is reduced by the portion of the understatement attributable to any non-tax-shelter item for which there was either substantial authority for the

position taken on the taxpayer's return or adequate disclosure in the return of the relevant facts affecting the treatment of such item. Sec. 6661(b)(2)(B)(i) and (ii). Respondent does not take the position that petitioner's activity constitutes a "tax shelter" as defined in section 6661(b)(2)(C)(ii).

Petitioner contends that substantial authority existed for the position taken on its returns and that the issue concerning the disputed charitable deductions was adequately disclosed in the returns as filed. Respondent disputes both contentions.

In *Schirmer v. Commissioner,* 89 T.C. 277, 285-286 (1987), we explained that the regulations provide for two types of adequate disclosure for purposes of section 6661(b)(2)(B)(ii): disclosure in a statement attached to the return or disclosure on the return pursuant to respondent's revenue procedures. Sec. 1.6661-4(b) and (c), Income Tax Regs. In addition, we noted that a taxpayer may satisfy the adequate disclosure requirement of section 6661(b)(2)(B)(ii) by providing on the return sufficient information to enable respondent to identify the potential controversy involved.

In the present case, the various returns filed by petitioner for the taxable years in dispute disclosed that petitioner was structured as a charitable lead trust and that petitioner claimed charitable deductions for purposes of the income tax in excess of the annual annuity amount required to be paid to charitable beneficiaries under the governing trust agreement. In short, such information was sufficient to put respondent on notice that the claimed deductions might exceed the amounts paid to charitable beneficiaries under the terms of the trust agreement for purposes of section 642(c). We conclude that petitioner disclosed sufficient information on its returns to allow respondent to identify the issues involved. It follows that petitioner is not liable for the additions to tax under section 6661.

To reflect the foregoing,

*Decision will be entered under Rule 155.*