HESTER L. STEIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stein
Docket No. 27380-90
United States Tax Court
T.C. Memo 1992-651; 1992 Tax Ct. Memo LEXIS 677; 64 T.C.M. (CCH) 1262; November 5, 1992, Filed *677 Decision will be entered under Rule 155. For Petitioner: Bruce B. Hart and Harmon L. Taylor. For Respondent: Helen T. Repsis and Susan J. Rascoe. SCOTT SCOTT MEMORANDUM OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the calendar year 1988 in the amount of $ 8,977 and an addition to tax under section 6661[1] in the amount of $ 2,244. The issues for decision are: (1) Whether an amount received by petitioner in 1988 under an offer made by her employer to certain employees who elected to terminate and retire when the employer was acquired by other corporations qualifies for 10-year averaging under section 402(e), [2] and (2) whether petitioner is liable for the addition to tax for 1988 for a substantial understatement of income tax under section 6661. *678 All of the facts have been stipulated and are found accordingly. Petitioner resided in Denison, Texas, at the time of the filing of her petition in this case. Petitioner timely filed her Federal income tax return for the calendar year 1988. During 1988, petitioner was employed by the Missouri-Kansas-Texas Railroad Company (MKT Railroad) as a non-agreement employee. A non-agreement employee was a person employed by MKT Railroad who was not under a collective bargaining agreement. As a non-agreement employee, petitioner was a participant in MKT Railroad's "Pension Plan for Non-Agreement Employees" (MKT Plan). In 1988, MKT Railroad was acquired by Union Pacific Co., Union Pacific Railroad, and Missouri Pacific Railroad Co. (the consolidation). Prior to the consolidation, MKT Railroad offered a "Pre-consolidation Voluntary Severance Program" (severance program). Under the severance program, any active non-agreement MKT Railroad employee could elect to participate in the program and choose from the following three options: (1) Terminate and retire; (2) terminate without retiring; or (3) exercise seniority to a position covered by a collective bargaining agreement. A document *679 entitled "Fact Sheet, A Missouri-Kansas-Texas Railroad System Pre-consolidation Voluntary Severance Program" (fact sheet A), which outlined the benefits participants would receive under each of the above three options was furnished to petitioner. According to fact sheet A, employees who chose to terminate and retire would receive a "severance payment" which would be paid "in addition to any retirement benefits the employee receives from the Missouri-Kansas-Texas System Pension Plan, Railroad Retirement Annuity and/or Social Security Annuity". The amount of the "severance payment" was computed on the basis of the participant's years of service and base salary. Fact sheet A states that applicable State, local, and Federal taxes and/or Social Security Taxes will be withheld from the "severance payment". Participants who chose to terminate and retire were given the option of being paid their "severance payment" either in a lump sum or in monthly payments. On July 7, 1988, petitioner elected to participate in the severance program and chose to terminate and retire. Petitioner decided to take a lump sum payment. She received $ 44,625 as payment for electing to terminate and retire *680 under the severance program. The payment of the net amount was made by check drawn on the bank account of the Missouri-Kansas-Texas Railroad Co. A statement accompanying the check explained how the net amount was computed. For the 1988 tax year, petitioner's Form W-2 from Union Pacific Railroad Co. stated that the wages paid to petitioner amounted to $ 71,747.08. This amount included the amount paid to petitioner under her election under the MKT Railroad "Pre-consolidation Voluntary Severance Program". On her 1988 Federal income tax return petitioner showed on line 7 as her wages, salaries, tips, etc., the amount of $ 71,747.08, which was the amount shown on her Form W-2. On line 22 of her 1988 Federal income tax return petitioner deducted the amount of $ 44,625, stating that the amount was a "lump sum Dist. erroneously reported by employer on w-2 and reportable on form 4972". Attached to petitioner's 1988 Federal income tax return was Form 4972 which showed the $ 44,625 payment to her as a lump sum distribution from a qualified plan, subject to the separate tax on lump sum distributions under section 402(e). On the Form 4972, petitioner chose 10-year averaging for reporting *681 the payment of $ 44,625 and computed the tax on this payment to be $ 4,964. The amount of $ 4,964 was entered on line 39 of petitioner's Federal income tax return as an additional tax. Petitioner also attached to her 1988 Federal income tax return a copy of the statement explaining the $ 44,625 payment which accompanied the check she received. This statement showed $ 14,000 as "Fed.", $ 1,342.63 as "RRI", and $ 317.42 as "RRII", leaving a net payment of $ 28,964.95. This explanation contained the legend "severance payment under MKT system pre-consolidation voluntary severance program". Petitioner's 1988 Federal income tax return was signed by Clem Bailey as preparer, as well as by petitioner. Respondent in the notice of deficiency determined that the payment received by petitioner from MKT Railroad was includable in full in her gross income with the explanation that "The severance income that you reported on Form 4972 does not qualify for 10-year averaging and must be included in income". Petitioner contends that the payment she received from MKT under the option she selected under MKT's Railroad severance program is in substance a lump sum distribution from a qualified plan *682 under section 402(e) and is therefore eligible for 10-year averaging. Respondent contends that the payment is not a distribution from a qualified plan under section 402(e), but is severance pay includable in gross income and not subject to 10-year averaging. Gross income includes income from whatever source derived and severance pay or termination pay received by a taxpayer from an employer is includable in gross income. Martin v. Commissioner, 90 T.C. 1078, 1082 (1988), affd. 877 F.2d 449 (6th Cir. 1989); Swofford v. Commissioner, 49 T.C. 128, 130 (1967); Simms v. Commissioner, 17 T.C. 1 (1951), affd. 196 F.2d 238 (D.C. Cir. 1952); sec. 1.61-2(a), Income Tax Regs. As petitioner points out, a distribution from a qualified plan is included in gross income under section 402(a), but under section 402(e), a lump sum distribution from a qualified plan is subtracted from gross income and instead subject to a separate tax on lump sum distributions. This special tax allows for either 5-year or 10-year averaging. For petitioner to be entitled *683 to use either 5-year or 10-year averaging with respect to the payment she received from MKT Railroad under its severance plan she must show that the payment is a lump sum distribution as defined in section 402(e)(4)(A). Section 402(e)(4)(A) defines a lump sum distribution as a distribution from a trust which is part of a plan described in section 401(a) and which is exempt from tax under section 501, or from a plan described in section 403(a). In addition, section 402(e)(4)(A) imposes the following requirements: (1) The distribution or payment is made within 1 taxable year; (2) the amount of distribution is the balance owed to the recipient from the plan; and (3) the amount is distributed for one of the following reasons: (a) employee's death, (b) employee attains age 59-1/2, (c) employee's separation from service, or (d) after the employee has become disabled. The facts before us do not show that the payment petitioner received under MKT Railroad's severance program is a lump sum distribution under section 402(e)(4)(A). Petitioner has presented no evidence to show that the distribution was from a qualified plan. Rather, the evidence shows that the payment was not from a qualified *684 plan, but from MKT Railroad as part of its severance program. There has been no evidence presented showing that the severance program was part of a plan described in section 401(a) and exempt from tax under section 501. Contrary to petitioner's assertion in her brief, she has presented no evidence that the amount of the distribution is the balance owed her under the MKT Pension Plan for Non-agreement Employees. Petitioner argues that since the amount of the distribution was determined in accordance with the severance program, the amount received is the balance owed her under the qualified plan. We find no basis in the facts here shown to support this argument. The only elements of a lump sum distribution under section 402(e)(4)(A) that petitioner has proven are that the payment was within 1 taxable year and that it was paid for separation from service. Consequently, we conclude that the payment by MKT Railroad to petitioner was not a lump sum distribution under section 402(e)(4)(A). Since the payment is not a lump sum distribution, it is not eligible for 10-year averaging under section 402(e). These facts show that the payment to petitioner by MKT Railroad was severance pay. *685 [3]
Section 6661(a) imposes an addition to tax equal to 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. An understatement is defined as the tax required to be shown on the return less the tax actually shown on the return, reduced by any rebates. Sec. 6661(b)(2). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). Here the understatement of tax exceeds $ 5,000. Section 6661(b)(2)(B) provides that in determining the amount of the understatement, the understatement is reduced by the items for which the taxpayer had substantial authority for the position taken on the return or *686 adequately disclosed the relevant facts on the return. Petitioner contends that she had substantial authority for using 10-year averaging. In the alternative, petitioner contends that she gave adequate disclosure of the understatement on her return. For these reasons petitioner concludes that she qualifies for reduction of the amount of the understatement to zero for purposes of section 6661. Under section 1.6661-3(b)(1), Income Tax Regs., for substantial authority to exist for a taxpayer's position, the weight of authorities in support of the taxpayer's position must be substantial when compared to the weight of authorities supporting contrary positions. Substantial authority refers to legal precedent which supports the position taken by the taxpayer. Antonides v. Commissioner, 91 T.C. 686, 702 (1988). As we have discussed, there was no authority for using 10-year averaging in reporting a severance payment. Therefore, we hold there was not substantial authority for the position taken by petitioner. Sec. 1.6661-4(b)(1), Income Tax Regs., states that disclosure will be adequate if made on a Form 8275 or if the disclosure is a statement attached *687 to the return that includes: (1) A caption identifying the statement as a section 6661 disclosure; (2) identification of the item to which disclosure is made; (3) the amount of the item; and (4) the facts affecting the tax treatment of the item that reasonably may be expected to apprise the Internal Revenue Service of the nature of the potential controversy concerning the tax treatment of the item. The regulations further state that the Commissioner may by revenue procedure establish the conditions in which information provided on the return in accordance with the applicable forms and instructions will be adequate disclosure for section 6661 purposes. Sec. 1.6661-4(c), Income Tax Regs. The Commissioner issued Rev. Proc. 89-11, 1989-1 C.B. 797, which applies to 1988 tax returns and which identifies situations where the disclosure on a taxpayer's return of an item is adequate disclosure. Petitioner did not use a Form 8275. Yet, our inquiry does not end there. According to the Joint Committee's explanation of section 6661, "disclosure is adequate if the taxpayer discloses facts sufficient to enable the Internal Revenue Service to identify *688 the potential controversy, if it analyzed that information". Staff of the Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982, at 218 (J. Comm. Print 1983); S. Rept. 97-494, 274 (1982); see also, Schirmer v. Commissioner, 89 T.C. 277, 285 (1987). This standard of disclosure compels "greater disclosure than is necessary to avoid the 6-year statute of limitations provided for in section 6501(e)(1)(A)". Staff of the Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982, at 218 (J. Comm. Print 1983). Recently in Crown Income Charitable Fund v. Commissioner, 98 T.C. 327, 340 (1992), citing Schirmer v. Commissioner, supra, we noted that the regulations provide for two types of adequate disclosure, that is disclosure in a statement attached to the return or disclosure on the return pursuant to respondent's revenue procedure. In addition, we stated that a taxpayer may satisfy the adequate disclosure requirements by providing on the return sufficient *689 information to enable respondent to identify the potential issue involved. As we have found, petitioner reported the MKT payment as income and then took a deduction. On the line used for the deduction, petitioner typed "lump sum Dist. erroneously reported by employer on w-2 & reportable on form 4972". The amount of the payment was then placed on Form 4972 and the tax computed under the 10-year averaging method. Petitioner also attached to her tax return a copy of the explanation she received from MKT with the payment which stated "severance payment under MKT system pre-consolidation voluntary severance program". Respondent concedes that the documentation on petitioner's return was "sufficient to determine that the payment was compensation and not a qualified lump sum distribution [as petitioner claimed]". Yet, respondent argues that "Since the answers to the questions of Form 4972 contradicted the information attached to the return, it was not apparent to the government that there was a discrepancy based upon the face of the return". We conclude that the disclosure on petitioner's return was adequate to disclose the controversy. Petitioner did not try to hide the position *690 she had taken on her 1988 tax return as is often done by those attempting to play the "audit lottery". Petitioner not only made a notation on the tax return that indicated the position she had taken, but also attached a copy of the explanation of the payment which indicated the potential controversy. We, therefore, hold that petitioner is not subject to the addition under section 6661. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. Although if petitioner were entitled to averaging under section 402(e)↩, as applicable to disbursements in 1988, 5-year and not 10-year averaging would apply, she claimed 10-year averaging on her return.
3. The facts in the present case are very similar to the facts in McKnight v. Commissioner, T.C. Memo. 1992-241. In McKnight↩, we held that the payment was income and not eligible for 10-year averaging (i.e., the payment was not a lump sum distribution).