REBECCA JANE VINCENT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Vincent v. Commissioner
Docket No. 15013-92
United States Tax Court
T.C. Memo 1994-345; 1994 Tax Ct. Memo LEXIS 359; 68 T.C.M. (CCH) 196; July 26, 1994, Filed *359 Decision will be entered for respondent. For petitioner: John W. Phillips. For respondent: Elaine L. Sierra. CHIECHI
CHIECHI
MEMORANDUM FINDINGS OF FACT AND OPINION CHIECHI, Judge: Respondent determined the following deficiencies in, and additions to, petitioner's Federal income tax: Additions to Tax
Section Section Section Section Year
Deficiency
6651(a)(1) [1]
6653(a)(1)
6654(a) 6661(a) 1988
$ 30,401
$ 1,520
$ 1,717
$ --
$ 7,600
1989
28,929
7,232
--
1,959
--
1990
13,494
3,374
--
888
--
The issues for decision are: [2]
*360 1. Is petitioner liable for 1988, 1989, and 1990 for tax on the income reported by an entity known as Vincent Engineering Company (VEC), as adjusted by respondent in the notices of deficiency (income reported by VEC as adjusted), in the amounts of $ 99,009, $ 104,029, and $ 57,996, respectively? We hold that she is. 2. Is petitioner liable for 1988 for self-employment tax in the amount of $ 5,859? We hold that she is. 3. Is petitioner liable for 1988, 1989, and 1990 for the additions to tax for failure to file timely under section 6651(a)? We hold that she is. 4. Is petitioner liable for 1988 for the addition to tax for negligence under section 6653(a)(1)? We hold that she is. 5. Is petitioner liable for 1988 for the addition to tax for a substantial understatement of income tax under section 6661(a)? We hold that she is. 6. Is petitioner liable for 1989 and 1990 for the additions to tax for failure to make sufficient estimated tax payments under section 6654(a)? We hold that she is. FINDINGS OF FACT Some of the facts have been stipulated and are so found. [3]
*361 At the time the petition was filed, petitioner resided in Madera, California. Petitioner and her husband, Jeffrey Vincent (Mr. Vincent), filed a joint Federal income tax return for 1988 that was received in the Fresno office of the Internal Revenue Service (the Service) on May 1, 1989. (Hereinafter, petitioner and Mr. Vincent are sometimes referred to as the Vincents.) Petitioner filed no Federal income tax returns for 1989 and 1990. On April 15, 1992, respondent mailed a notice of deficiency to the Vincents for 1988 [4] (1988 notice) and a notice of deficiency to petitioner for 1989 and 1990 (1989 and 1990 notice). (Hereinafter, the 1988 notice and the 1989 and 1990 notice will be referred to collectively as the notices.) In 1976, Mr. Vincent, then a machinist, started a sole proprietorship known as Vincent Engineering & Machineworks. The joint Federal income tax return filed by the Vincents for 1986 (the Vincents' 1986 return) showed in Schedule C *362 (1986 Schedule C) that Mr. Vincent operated a sole proprietorship that was called "Vincent Engineering" and that had a business address at 1411 N. Whitney, Fresno, California. The Vincents' 1986 return listed the occupations of petitioner and Mr. Vincent as bookkeeper and machinist, respectively. The 1986 Schedule C showed a net profit from Vincent Engineering of $ 30,088. Petitioner reported $ 5,940 in compensation from Vincent Engineering in the Vincents' 1986 return. On April 20, 1987, Mr. Vincent submitted an application in his individual capacity for membership in Wellington Societe of Business Administrators (WSBA). In the application, WSBA is described as a "fraternal, benevolent, non-profit and Charitable Association" under the laws of the Turks and Caicos Islands, British West Indies. At the direction of Mr. Vincent and petitioner, WSBA was to assist in the formation of "a Contractual Company arrangement". On April 24, 1987, a document entitled "Declaration of Contract and Indenture of a Common Law Contractual Company (Amended)" (the contractual company document) was executed by Louis Mayer (Mr. Mayer) on behalf of Oxford Charter Corporation (Oxford) as trustee. [5] *363 The contractual company document provided for the formation of VEC as an entity "originally domiciled in, and * * * interpreted and construed under the Constitution of the United States of America and the laws of the State of Delaware." The contractual company document identifies VEC as "an Unincorporated Business Organization * * * and not a trust agreement by gift, or a partnership, or a company, or a corporation, or a joint venture, or any entity of statutory nature." *364 During the years at issue, VEC was operated as a machine shop and had the same business address that Vincent Engineering had reported in the 1986 Schedule C, viz., 1411 N. Whitney, Fresno, California. On May 7, 1987, Mr. Vincent was designated as the general manager, and petitioner was designated as the secretary, of VEC. On that same date, petitioner was also designated as the successor general manager of VEC in the event that Mr. Vincent were to resign, become incapacitated, or die. Mr. Vincent's position as VEC's general manager and petitioner's position as VEC's secretary were reaffirmed on April 10, 1988. During the years at issue, the Vincents were associated (as described below) with other entities related to VEC, including CD Enterprises Company (CDE), LM Investments Company (LMI), MN Investments Company (MNI), and KL Trading Company (KL). Each of the first three of those entities was formed pursuant to a document dated during August 1986 that described it as a "business trust organization" under the laws of the Turks and Caicos Islands, British West Indies. The fourth entity, KL, was formed pursuant to a document dated during April 1987 that described it as a "common *365 law contractual company". The trustee of KL was Oxford. Mr. Vincent was the president or general manager, and petitioner was the secretary, of CDE, LMI, MNI, and KL. Whiteley Trading Company (WTC) was created pursuant to a document dated April 25, 1983, that described it as a "business trust organization" under the laws of the Turks and Caicos Islands, British West Indies. As of April 25, 1983, Gordon Vincent, Mr. Vincent's father, and Pauline Vincent, Mr. Vincent's mother, each was described as a "unit holder" in WTC, who held 49.5 units in that entity. WTC filed U.S. fiduciary income tax returns (Forms 1041) for 1988, 1989, and 1990, in which it listed as its sole beneficiary BC Enterprises Company (BCE). [6] During the years at issue, Mr. Vincent had check-signing authority on WTC's bank accounts. Pauline Vincent was the secretary of BCE. As of December 10, 1986, BCE was described as a "unit holder" in WTC that held 100 units *366 in WTC. The parties stipulated that the following entities had the "unit holders" indicated: Name of Entity "Unit Holder"
VEC
BCE
MNI
CDE
KL
BCE
LMI
CDE
BCE
CDE
CDE
WSBA
Mr. Vincent, petitioner, or one of their close relatives had check-signing authority during all three years at issue for the entities indicated, as follows: Name of Entity
Authorized Signatories
VEC
Mr. Vincent, Mary Vincent, [7]
and petitioner
MNI
Mary Vincent
KL
Mary Vincent
LMI
Mary Vincent and petitioner
BCE
Pauline Vincent
CDE
Mary Vincent
On or about April 23, 1991, the Service began an audit of the tax years at issue. During that audit, the examining agent (revenue agent) examined numerous bank records, canceled checks, and deposit slips with respect to transactions that occurred during the years at issue involving entities with which the Vincents were associated, including VEC, BCE, CDE, LMI, KL, and WTC. Based on his examination of those documents, *367 the revenue agent traced all or most of the funds distributed by VEC through BCE and CDE into a bank account of LMI. During the years at issue, petitioner signed checks drawn on LMI's bank account to pay the Vincents' personal expenses, including expenses paid to San Joaquin Pest Control, Pacific Bell, Costas Gardening, the Department of Motor Vehicles, PG&E, E&J Lumber, Continental Cable, Matson Alarm, the Neptune Society, Chris Davis, Carl McKercher, Linda Cox, Judi Baird, and cash. VEC filed U.S. fiduciary income tax returns (viz., a Form 1041S for 1988 and a Form 1041 for each of the years 1989 and 1990) that listed BCE as its sole beneficiary. In its return for 1988 (1988 Form 1041S), VEC showed on line 8 as total income the amount of $ 49,637. In the Schedule C attached to the 1988 Form 1041S, VEC showed on line 22 as rent on business property the amount of $ 34,284 and on line 29 as equipment rental/contributions the amount of $ 15,123. In its return for 1989 (1989 Form 1041), VEC showed on line 9 as total income the amount of $ 158,668. In the Schedule C attached to the 1989 Form 1041, VEC showed on line 21a as rent on machinery and equipment the amount of $ 37,661 and *368 on line 21b as rent on other business property the amount of $ 11,428. In its return for 1990 (1990 Form 1041), VEC showed on line 9 as total income the amount of $ 62,483. In the Schedule C attached to the 1990 Form 1041, VEC showed on line 20a as rent on vehicles, machinery and equipment the amount of $ 18,210 and on line 20b as rent on other business property the amount of $ 35,299. For 1988, 1989, and 1990, VEC reported in the returns it filed for those years amounts characterized as building rent payments to WTC for property located at 1411 N. Whitney, Fresno, California, in the amounts of $ 34,248, $ 11,428, and $ 35,299, respectively. For 1988, 1989, and 1990, VEC reported in the returns it filed for those years amounts characterized as equipment lease payments to KL in the amounts of $ 15,123, $ 37,661, and $ 18,210, respectively. [8] On November 4, 1986, Mr. Vincent executed, on behalf of VEC, an agreement entitled Lease Agreement (equipment document), covering lathes, mills, drills, saws, sanders, and other equipment. Mr. Mayer executed that same document on behalf of the trustee for KL, Colonial Heritage Corporation. VEC was described as the lessee, and KL was described *369 as the lessor, in the equipment document. For 1988, VEC claimed in the 1988 Form 1041S an $ 18,808 amount characterized as a contract labor cost that was paid to Mr. Vincent. A document entitled Transmutation of Community Property Declaration and Agreement Thereof (hereinafter referred to as either the Transmutation Document or the Document), in which petitioner was described as the adverse party, provided: That * * * [petitioner] hereby, voluntarily and without reservation, conveys to her husband as the personal and separate property of * * * [Mr.] Vincent, and thereby divests *370 from herself any right, interest or claim to, or in, the community property as set forth herein, effective from the date of this agreement and forward; and that all interest income, stocks, bonds, dividends, wages, income, rental income and other earnings of * * * [Mr.] Vincent acquired by and through his own labor and/or initiative, is now and forever hereafter transmuted from the status of community property to the status of the separate and distinct personal property of * * * [Mr.] Vincent * * *. * * * The parties signatory hereto agree that there will be no comingling [sic] of their separate property with the community property of the marital estate. Any incidental or inadvertent comingling [sic] of property will not serve to nullify the intent of this agreement, unless and until it can conclusively be shown by the adverse party or a third party, that such comingling [sic] of property was not incidental or inadvertent and was done so to achieve favorable consideration for either of the parties signatory hereto, with the consent and knowledge of the other party, pursuant to the community property laws of the State of California and contrary to the intent of this agreement. Further, *371 it is understood, that supplying the adverse party hereto, with funds to pay necessary family living expenses and to provide food, clothing and shelter for the family and the dependents thereof, and providing for the same a comfortable manner of living within * * * [Mr.] Vincent's financial means shall not constitute, expressly or by implication, the comingling [sic] of separate and community property.
Properties described in the Document as excluded from its application are "real estate, excepting rental income from income producing property, family vehicles, wearing apparel, gifts, or other tangible or intangible items otherwise considered statutory community property or the separate property of" petitioner. Pursuant to the Transmutation Document, Mr. Vincent was to establish a separate bank account for his separate and personal funds, and petitioner was not to have access to that separate bank account and was not to be a signatory thereon. The last page of the Transmutation Document reflects a date of May 1, 1989. The names and purported signatures of Mr. Vincent and petitioner, as well as the names and purported signatures (as witnesses) of three other individuals, appear *372 on the last page of the Document. OPINION The United States Court of Appeals for the Ninth Circuit, the court to which an appeal would lie, requires that respondent come forward with some substantive evidence that a taxpayer received unreported income before she may rely on the presumption that her determination is correct. Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985), affg. an Order of this Court; Edwards v. Commissioner, 680 F.2d 1268, 1270-1271 (9th Cir. 1982), affg. per curiam an Order of this Court; Weimerskirch v. Commissioner, 596 F.2d 358, 360 (9th Cir. 1979), revg. 67 T.C. 672 (1977). Petitioner moved at trial to have the burden of proof shifted to respondent on the ground that the determinations reflected in the notices lacked an adequate foundation. We found that respondent satisfied the requirement imposed by the Ninth Circuit and denied petitioner's motion. Consequently, petitioner has the burden of proving that respondent's determinations in the notices are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); *373 Rapp v. Commissioner, supra at 935. With respect to petitioner's efforts to satisfy her burden of proof, we note that petitioner called no witnesses. In fact, she was not even present at trial. Petitioner did submit as an exhibit a declaration of self-serving statements (the declaration). We are not required to accept the declaration as establishing the truth of the matters asserted therein. Rule 143(b); see Republic Bank & Trust Co. v. Commissioner, 36 B.T.A. 680, 685 (1937) (quoting a Memorandum Opinion of this Court filed June 26, 1936). VEC and the Other Entities
On brief, respondent takes the position that "business income from VEC [as adjusted in the notices] is, in substance, income of * * * [Mr.] Vincent" and that (1) petitioner is liable for tax on that income for 1988 because she filed a joint return with Mr. Vincent for that year and (2) petitioner is liable for tax on her community property share of that income for 1989 and 1990 because of the operation of the community property laws of California. In advancing her position, respondent relies on three alternative contentions. It is respondent's *374 principal contention that VEC, MNI, LMI, KL, CDE, BCE, and WTC (hereinafter, those entities other than VEC will be referred to collectively as the other entities) were sham entities and/or that certain transactions between those entities were shams. Respondent also contends alternatively (1) that the grantor trust provisions of sections 671 through 679 support her position and (2) that petitioner is not entitled under sections 162 and 212 to certain deductions claimed by VEC for 1988, 1989, and 1990. [9]
To support her contentions, respondent presented the testimony of the revenue agent who *375 audited the years at issue. He testified that, based on his examination of bank records, canceled checks, and deposit slips with respect to transactions that occurred during the years at issue involving entities with which the Vincents were associated, including VEC, BCE, CDE, LMI, KL, and WTC, he was able to trace to a bank account of LMI all or most of the funds that were distributed by VEC through BCE and CDE (and the other entities) and that were characterized as expenses and disbursements to persons labeled trust beneficiaries. He further testified that petitioner used that account of LMI during the years at issue to pay the Vincents' personal expenses. In addition, the revenue agent testified that the expenses claimed by VEC for 1988, 1989, and 1990 as rental payments to KL and WTC were disallowed because those payments had no economic basis. In an effort to counter respondent's arguments and the evidence adduced at trial, petitioner contends that the document creating VEC "meets the requirements of a valid trust pursuant to the [Internal Revenue] Code, and as such, VEC qualifies as a legal trust entity." [10] Proceeding from this assumed premise, petitioner further contends: *376 "No basis exists for reattributing the income of VEC to additional taxpayers." Respondent did not stipulate to the legal effect of any of the following documents (the documents): (1) Organizational and related documents for VEC, CDE, KL, LMI, MNI, and WTC; (2) fiduciary income tax returns filed by VEC for the years 1988, 1989, and 1990; (3) minutes for VEC and WTC that summarize actions of the trustees of those entities; and (4) a copy of the equipment document between VEC and KL. Consequently, petitioner cannot merely point to the documents as determinative of the question whether, for Federal income tax purposes, VEC was a sham or should be recognized as a trust for the years at issue. Other than the documents, no evidence was presented to support petitioner's position on that issue." [11] Nor does the record support petitioner's position that "No *377 basis exists for reattributing the income of VEC to additional taxpayers." To the contrary, the record shows, inter alia, that during the years at issue all or most of the funds distributed by VEC through BCE and CDE were deposited into a bank account of LMI and that petitioner signed checks on that bank account that were used to pay the Vincents' personal expenses. Petitioner argues in the alternative that, even if VEC was a sham and should not be recognized as a trust for Federal income tax purposes for the years at issue, "[Mr.] Vincent is the source of the adjustments attributable to Petitioner" (a point that respondent does not dispute) and that she is not liable *378 for any taxes arising from those "adjustments". Specifically, with respect to her tax liability for 1988, petitioner contends that "adjustments" sourced to Mr. Vincent for that year are a "grossly erroneous item" of Mr. Vincent under the so-called innocent spouse provisions of section 6013(e)[12] *379 and that she is not liable for tax on those "adjustments". With respect to her tax liability for the years 1989 and 1990, petitioner contends that she is not liable for taxes on "income from the operation of VEC * * * after May 1, 1989" because such income was sourced to Mr. Vincent and, pursuant to the Transmutation Document, "any interest which * * * [she] may have otherwise had in, or to the community property earnings of * * * [Mr.] Vincent through his operation of VEC are transmuted into [his] separate property" and are taxable solely to him. [13]
Turning to 1988, we note that a husband and wife are jointly and severally liable for any tax in respect of a year for which they file a joint income tax return. Sec. 6013(d)(3); Garfinkel v. Commissioner, 67 T.C. 1028, 1030 (1977). Petitioner and Mr. Vincent filed a joint Federal income tax return for 1988. Consequently, petitioner is liable for 1988 for any tax from unreported income of Mr. Vincent. On the instant record, we find that petitioner has failed to show that respondent's determination regarding petitioner's liability for tax on unreported income as reflected in the 1988 notice is incorrect. Accordingly, we sustain *380 that determination. Turning to 1989 and 1990, respondent contends that the Transmutation Document on which petitioner relies should not be given effect and that therefore petitioner, who is subject to the community property laws of California, is liable for those years for tax on one-half of the income reported by VEC as adjusted. Respondent advances a number of arguments with respect to the Document. We need only address two of those arguments in order to resolve the parties' dispute over the effect, if any, of that Document, viz., (1) the validity and legal effect of the Transmutation Document has not been established; and (2) the evidence does not establish that, pursuant to the Document, the Vincents ceased treating any of their community property as such or that they began to treat the earnings of Mr. Vincent from VEC as his separate property. We agree with respondent. Spouses who are domiciled in California and who file separate returns must report and pay tax on their one-half interest in community income. United States v. Malcolm, 282 U.S. 792, 794 (1931). Federal income tax liability follows ownership. United States v. Mitchell, 403 U.S. 190, 197 (1971). *381 A State's community property laws control in determining the ownership of community income for Federal income tax purposes. Id.
Community property is defined under California law as "property acquired by husband and wife, or either, during marriage, when not acquired as the separate property of either." Cal. Civ. Code sec. 687 (West 1982). [14] Thus, under the community property laws of California, earnings of a spouse during marriage are community property. Winn v. Winn, 299 P.2d 721, 725 (Cal. Dist. Ct. App. 1956); see Cal. Civ. Code sec. 687 (West 1982). Generally, separate property includes only property owned by each spouse prior to marriage and property received by gift, devise, or bequest thereafter, as well as the "rents, issues, and profits" of such property. Cal. Civ. Code secs. 5107, 5108 (Deering 1988). In the absence of other evidence, living expenses are presumed to have been paid out of community property rather than separate property. Beam v. Bank of America, 490 P.2d 257, 264 (Cal. 1971). *382 Married persons residing in California may by agreement or transfer, with or without consideration, transmute community property to the separate property of either spouse. Cal. Civ. Code sec. 5110.710(a) (Deering 1988). A transmutation of community property to separate property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest is adversely affected as a result of the transmutation. Cal. Civ. Code sec. 5110.730(a) (Deering 1988). The existence of a transmutation agreement does not affect California law governing the characterization of property in which separate property and community property are commingled or otherwise combined. Cal. Civ. Code sec. 5110.730(d) (Deering 1988). In this regard, a presumption in favor of community property applies to commingled property. Consequently, if separate property or funds that have been commingled with community property cannot be traced, the entire mass is treated as community property. Millington v. Millington, 67 Cal. Rptr. 128, 140 (Ct. App. 1968) (citing 10 Cal. Jur.2d 702-703). The only evidence in the record *383 relating to petitioner's contention that, pursuant to the Transmutation Document, as of May 1, 1989, "the community property earnings of * * * [Mr.] Vincent through his operation of VEC are transmuted into [his] separate property" is the Document itself. Respondent did not stipulate to the legal effect of the Transmutation Document. Therefore, petitioner must do more than merely point to it as evidence of its substance. However, no other evidence has been presented. Consequently, we agree with respondent that petitioner failed to establish the validity of the Transmutation Document. Although the Document on its face bears an execution date of May 1, 1989, and was purportedly signed by three individuals (as witnesses), in addition to petitioner and Mr. Vincent, respondent correctly points out that, other than a self-serving statement appearing in the declaration executed by petitioner to the effect that she executed the Document on May 1, 1989, petitioner has not established by way of other evidence that the Transmutation Document was in fact executed on May 1, 1989 (or on any other date) by the Vincents or witnessed on that date (or on any other date) by the three other individuals *384 whose names appear on the last page of the Document. Petitioner did not testify and did not call as witnesses on her behalf Mr. Vincent or any of the three individuals whose names appear on the last page of the Transmutation Document. We may therefore presume that the testimony of those witnesses would not have been favorable to petitioner's position on this issue. [15]Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Even assuming arguendo that the Transmutation Document were properly executed, petitioner has not shown that she and Mr. Vincent complied with its terms. We thus agree with respondent that petitioner did not establish that, pursuant to the Transmutation Document, *385 the Vincents ceased treating any of their community property as such or that they began to treat income from VEC as the separate property of Mr. Vincent. Petitioner did not produce evidence that, in accordance with the Document, Mr. Vincent established a separate account over which petitioner did not have access or signatory authority and in which he deposited his separate earnings. Petitioner also did not identify any income that was traceable as the separate property of Mr. Vincent. The evidence presented discloses that petitioner was authorized to sign checks on behalf of VEC and therefore had access to the earnings of VEC. Moreover, funds of VEC that ultimately were deposited into LMI's checking account were used to pay personal expenses of the Vincents; those expenses were paid with checks that petitioner signed. Petitioner did not produce any evidence that the personal expenses she paid with funds originating from VEC were "necessary family living expenses and to provide food, clothing and shelter" for her family that would fall within the exception provided for such expenses in the clause of the Transmutation Document dealing with the commingling of the Vincents' separate *386 and community property. In any event, even if petitioner had adduced such evidence, we believe that the moneys used to pay such "necessary family living expenses and to provide food, clothing and shelter" would be community income, one-half of which would be taxable to her. On the instant record, petitioner failed to show that the Transmutation Document was given effect by them, that it should be given effect for Federal income tax purposes for the period May 1, 1989 through 1990, or that the determinations regarding petitioner's liability for tax on unreported income as reflected in the 1989 and 1990 notice are otherwise erroneous. [16] Accordingly, we sustain those determinations. Self-employment Tax
Petitioner presented no evidence and makes no argument regarding her liability for self-employment tax for 1988. Consequently, petitioner has failed to satisfy her burden of proof on that issue. See Rule 142(a); Welch v. Helvering, 290 U.S. at 115. *387 Accordingly, we sustain respondent's determination regarding petitioner's liability for self-employment tax for 1988. Additions to Tax
Petitioner presented no evidence and makes no argument regarding the additions to tax under sections 6651(a)(1), 6653(a)(1), and 6661(a) for 1988 and under sections 6651(a)(1) and 6654(a) for 1989 and 1990. Consequently, petitioner has failed to satisfy her burden of proof on those issues. See Rule 142(a); Niedringhaus v. Commissioner, 99 T.C. 202, 220-222 (1992); Crown Income Charitable Fund v. Commissioner, 98 T.C. 327, 339 (1992), affd. 8 F.3d 571 (7th Cir. 1993); Baldwin v. Commissioner, 84 T.C. 859, 871 (1985). Accordingly, we sustain respondent's determinations that petitioner is liable for 1988 for the additions to tax under sections 6651(a)(1), 6653(a)(1), and 6661(a) and for 1989 and 1990 for the additions to tax under sections 6651(a)(1) and 6654(a). To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In the notice of deficiency for 1989 and 1990, respondent determined that petitioner is entitled to a personal exemption and a standard deduction for each of those years. Petitioner presented no evidence and makes no argument concerning those determinations. We therefore consider her to have conceded them. See Rybak v. Commissioner, 91 T.C. 524, 566↩ (1988).
3. In the stipulation of facts, petitioner reserved the right to object on grounds of relevancy and hearsay to a number of documents attached to that stipulation. At trial, petitioner raised no such objections with respect to the documents in respect of which she had reserved the right to object.↩
4. No petition was filed for 1988 on behalf of Mr. Vincent.↩
5. Our use herein of the words "trustee", "beneficiary", "unit holder", and similar terms is for convenience only and does not reflect our view as to whether the person to whom any such term is applied held, for Federal tax purposes, the position suggested by such term. Moreover, our use herein of the words "trust", "contractual company", "unincorporated business organization", and similar terms is for convenience only and does not reflect our view as to whether the entity to which such term is applied was, for Federal tax purposes, the type of entity suggested by such term.↩
6. No documents regarding the formation of BCE are part of the record in this case.↩
7. Mary Vincent is petitioner's sister-in-law and Mr. Vincent's sister.↩
8. The parties stipulated that for 1989 VEC claimed $ 11,428 as an equipment lease payment and $ 37,661 as a building rent payment. In the Schedule C attached to the 1989 Form 1041, however, VEC showed on line 21a as rent on machinery and equipment the amount of $ 37,661 and on line 21b as rent on other business property the amount of $ 11,428. It appears that in their stipulation the parties inadvertently transposed those amounts.↩
9. With respect to the deductions claimed by VEC for the years at issue, respondent argues that (1) the amounts characterized as building rent payments by VEC to WTC and as equipment lease payments by VEC to KL were made as part of sham transactions and that therefore those payments are not deductible, and (2) the amount characterized as a contract labor cost paid to Mr. Vincent during 1988 is not a deductible business expense.↩
10. In support of her position, petitioner cites sec. 701. That section, however, deals with the taxation of partners in a partnership; it does not relate to trusts.↩
11. Petitioner adduced no evidence and makes no argument relating to the transactions between VEC and KL and WTC, respectively, that respondent contends were shams. We therefore consider petitioner to have conceded respondent's determinations that those transactions were shams. See Rybak v. Commissioner, 91 T.C. at 566↩.
12. At the conclusion of the trial of this case, petitioner moved for the first time to amend the pleadings to allow a claim under sec. 6013(e) for 1988. As a result of petitioner's decision not to testify, respondent was unable to question her in order to rebut any claim under that section and would therefore have been prejudiced. Accordingly, we denied that motion. On brief, petitioner nevertheless improperly addresses her claim under sec. 6013(e)↩. Even if that claim were proper, the record does not support it.
13. In arguing her alternative contentions, petitioner does not contend that one-half of the income from the operation of VEC from January 1, 1989, through April 30, 1989, is not taxable to her for 1989 as her share of the Vincents' community property income. We therefore consider petitioner to have conceded her liability for tax for 1989 at least to that extent. See Rybak v. Commissioner, supra↩ at 566.
14. All references to Cal. Civ. Code are to sections of the California Civil Code in effect for the years at issue.↩
15. We also point out that the revenue agent testified that, during the course of his audit of the years at issue, he spoke with Mr. Vincent who made no mention at that time about the existence of the Transmutation Document.↩
16. Petitioner does not argue that any part of sec. 66 applies.↩